PRYOR CASHMAN LLP

New York | Los Angeles

7 Times Square, New York, NY 10036   Tel: 212-421-4100   Fax: 212-326-0806

www.pryorcashman.com

**Ilene S. Farkas**
Partner

Direct Tel: 212-326-0188
Direct Fax: 212-798-6382
ifarkas@pryorcashman.com

October 18, 2013

**VIA E-MAIL:** (Netburn_NYSDChambers@nysd.uscourts.gov)
Honorable Sarah Netburn
United States District Court
Southern District of New York
40 Foley Square, Room 219
New York, NY 10007

Re:   Capitol Records, LLC d/b/a EMI Music North America v.
      Escape Media Group, Inc., 12 Civ. 6646 (AJN) (SN)

Dear Judge Netburn:

We are counsel for Plaintiff Capitol Records, LLC d/b/a EMI Music North America ("EMI") in the above-captioned action and submit this letter seeking a determination of contract damages on EMI's Second Claim for breach of contract, pursuant to the Court's Order dated October 4, 2013.

**Principal Amount Due For Unpaid Months Under the Distribution Agreement**

The following facts are not, and cannot, be in dispute:

- Escape has stipulated as to liability on the contract claim. This liability is based on Escape's failure to render the contractually-required monthly Sales Reports and corresponding payments.

- Escape was obligated under the Distribution Agreement to render monthly Sales Reports and to make certain corresponding monthly payments within twenty days of the end of each month.

- Escape stopped rendering the required monthly Sales Reports and stopped making any payments due to EMI under the Distribution Agreement in December 2011 and failed to pay EMI for the months of December 2011 through March 22, 2012, when EMI terminated the agreement.

- Escape has not produced Sales Reports for the missing months of usage of EMI Content from December 2011 through March 2012 or paid EMI for such usage, despite due request for such reports.

**PRYOR CASHMAN LLP**

Hon. Sarah Netburn
October 18, 2013
Page 2

- As shown on Exhibit A, before it ceased reporting and paying, Escape paid EMI $203,936.74 for the month of September 2011; $222,753.32 for the month of October 2011; and $228,911.23 for the month of November 2011.[1]

- The average amount paid by Escape to EMI for the last three months prior to termination was $218,533.76.

"New York courts do not require scientific rigor in the calculation of damages." *Lexington Products, Ltd. v. B. D. Communications, Inc.*, 677 F.2d 251, 253 (2d Cir. 1982) (citations omitted). "[W]here a wrong has been done, the courts will endeavor to make a reasonable estimate of damages." *Id.* (citations omitted). In arriving at such reasonable determination, Escape's Sales Reports for the period immediately preceding Escape's breach are the best available proxy for the determination of damages owed EMI on its breach of contract claim, namely the amounts Escape would have paid EMI in the months immediately following Escape's breach. *See In re Best Payphones, Inc.*, 2007 Bankr. LEXIS 1677, at *54-55 (Bankr. S.D.N.Y. May 8, 2007) ("Where the party seeking damages for breach of contract 'has shown a track record of sales before [the] other party's breach,' its prior experience supplies a basis for 'determining with some specificity the financial repercussion of [the] breach.' *Lexington Products Ltd.*, 677 F.2d at 254; accord *Care Travel Co. Ltd. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 994 (2d Cir. 1991) (sales data enabled jury to estimate amount of revenue lost when defendant breached exclusive agency agreement); *see Merlite Indus., Inc. v. Valassis Inserts, Inc.*, 12 F.3d 373, 376 (2d Cir. 1993) (lost profit evidence sufficient where 'Merlite, an established business, offered statistical evidence of its past performance in a remarkably similar advertising program').").

EMI submits that, in the absence of any Sales Reports for this period, which Escape was contractually required to prepare and provide, EMI believes that the best available proxy for the determination of damages on EMI's Second Claim is by looking at the last three Sales Reports that Escape provided to EMI (*i.e.*, from September 2011 through November 2011). Using the average monthly payment for these three months ($218,533.76) as a proxy for the amount owed per month from December 2011 through March 22, 2012, the principal amount of damages is $810,689.75. These were amounts that were verified by a third party preparer of Escape's choosing, and amounts that Escape agreed were due and owing to EMI.

The alternative is to force EMI to retain an a third party preparer for these contractually-required Sales Reports, at significant expense (which expense should be levied upon Escape), given the billions of lines of data that would have to be processed. Given the availability of the prior payment history as a reasonable substitute, EMI submits that judicial economy and reason support the determination of damages based on the methodology proposed herein.

---

[1] The Sales Reports are quite voluminous, and thus EMI is attaching a copy of the "Monthly Totals" page from the November 2011 report, which shows the monthly payments for September and October 2011 as well, as Exhibit A hereto. Of course, should the Court wish to review the complete Sales Reports, EMI will gladly make those available.

 **PRYOR CASHMAN LLP**

Hon. Sarah Netburn
October 18, 2013
Page 3

### Interest And Attorneys' Fees

The Distribution Agreement further provides that, with respect to late payments, "[a]ll amounts not paid when due and payable shall bear interest at an annual rate equal to the lesser of: (a) 18% per annum, calculated, compounded and payable on a monthly basis; and (b) the maximum rate of interest allowable by law for the transactions between sophisticated commercial entities." Additionally, the Distribution Agreement contains an attorneys' fees provision which provides that in "the event that a court in a civil action finds that [Escape] has failed to pay or has underpaid to EMI any amounts that were due from [Escape] to EMI hereunder, then in addition to paying such underpaid amounts, interest thereon and any other damages awarded in such an action to EMI, [Escape] shall also pay to EMI the reasonable attorneys' fees and costs incurred by EMI in connection with such civil action, and [Escape] consents to the award of such attorneys' fees in such a civil action." A copy of the Distribution Agreement is annexed hereto as Exhibit B.

An interest calculation for the amounts due and owing from Escape is annexed hereto as Exhibit C.

In the event that the Court grants EMI's application, EMI respectfully requests an inquest on the amount of attorneys' fees due and owing to EMI from Escape.

Accordingly, adding in the 18% interest per annum, compounded monthly, EMI is entitled to an award of $1,085,818.58 on EMI's Second Claim, plus attorneys' fees.

We thank the Court for its attention to this matter. We are available at the Court's convenience should Your Honor wish to discuss this matter further.

Respectfully,

Ilene S. Farkas

cc:   Counsel for Escape (via Email)