
# PRYOR CASHMAN LLP

New York | Los Angeles

7 Times Square, New York, NY 10036   Tel: 212-421-4100   Fax: 212-326-0806

www.pryorcashman.com

**Ilene S. Farkas**
Partner

Direct Tel: 212-326-0188
Direct Fax: 212-798-6382
ifarkas@pryorcashman.com

November 1, 2013

**VIA E-MAIL:** **(Netburn_NYSDChambers@nysd.uscourts.gov)**
Honorable Sarah Netburn
United States District Court
Southern District of New York
40 Foley Square, Room 219
New York, NY 10007

Re:   Capitol Records, LLC d/b/a EMI Music North America v.
        Escape Media Group, Inc., 12 Civ. 6646 (AJN) (SN)

Dear Judge Netburn:

We are counsel for Plaintiff Capitol Records, LLC d/b/a EMI Music North America ("EMI") in the above-captioned action. We write in response to the opposition filed by Escape Media Group, Inc. ("Escape") to EMI's application respecting the determination of contract damages pursuant to the Court's Order dated October 4, 2013. As Your Honor will recall, Escape stipulated that it had breached its contract with EMI, leaving only the determination of damages at issue on EMI's Second Claim for Relief.

As the Record confirms, from first to last, Escape's approach to this case has had a singular goal: delay, at all costs, any final determination. Escape's latest submission to this Court is of a piece with that approach.

EMI presented this Court with an accepted, streamlined methodology for determining the measure of monies owed on the stipulated breach of contract claim – a method that the Court has already suggested to the parties as an appropriate approach to such determination. In support of its application, EMI presented the following undisputed and uncontested facts (which Escape's letter nowhere denies), together with evidentiary support for its calculation:

    a.   Escape breached the Distribution Agreement by failing to live up to its obligation to prepare and send monthly Sales Reports and the accompanying payments to EMI for a certain period.

    b.   Escape owes payments to EMI for the contested period.

**PRYOR CASHMAN LLP**

Hon. Sarah Netburn
November 1, 2013
Page 2

        c.      Escape retained MRI and Escape paid EMI the amounts MRI found to be due under those reports for the months prior to its breach.[1]

EMI also submitted relevant, on-point authority which demonstrates EMI's approach is well-founded, supported and reasonable.

Unable to contradict EMI's presentation, Escape instead provides only hyperbolic rhetoric and unsupported conclusions of counsel seeking only to further its delaying tactics. Arguing for the rejection of EMI's proposed approach, Escape offers no alternative approach or even any alternative computation of damages. While Escape concedes that it owes monthly payments for the period at issue (December 2011-March 22, 2012), it offers no hint – much less evidence – as to what it actually owes for such period. It offers nothing, not a shred of evidence, to rebut its own admissions that these were properly-calculated monies due and owing – and paid – by Escape to EMI – or to otherwise challenge EMI's methodology.[2]

EMI has presented an appropriate, rational and legally proper methodology for determining the amount of damages Escape owes by reference to an average of past Sales Reports (a report derived from Escape's own records). Without the slightest attempt to meaningfully distinguish the authorities cited by EMI, Escape instead tries to sidestep them, suggesting that they pertain only to instances "in which adequate information for the relevant time period was not available." In an approach that is patently designed to increase the costs imposed on EMI and further delay an award of damages on a stipulated claim, Escape insists that EMI must instead retain a third party to recreate Sales Reports two years after their due date, from past data, the "adequacy" of which Escape presumes – as if no other methodology is permitted in these circumstances.

The cases cited by EMI impose no such obligation. Quite the contrary, as noted in EMI's opening letter, New York authority provides "[w]here liability has been shown, the injured party is not required to prove its damages to a mathematical certainty: 'New York courts do not require scientific rigor in the calculation of damages.'" *See In re Best Payphones, Inc.*, 2007 Bankr. LEXIS 1677, at *53 (Bankr. S.D.N.Y. May 8, 2007) (quoting *Lexington Products, Ltd. v. B. D. Communications, Inc.*, 677 F.2d 251, 253 (2d Cir. 1982)) (internal citations omitted).

This is not a case in which EMI is attempting to avoid the necessity of providing a logical and reasonable basis for establishing the harm it has suffered by virtue of an undisputed breach of

---

[1] Escape's counsel's feigned "surprise" ignores the call he placed to me on or about October 22, 2013 – a few days before his letter – in which I explicitly reiterated our intent to comply with the Court's October 4th Order, which directed the parties to resolve this straightforward issue in this manner.

[2] There is no basis for Escape's counsel's naked assertion that "EMI is *apparently* closely affiliated and aligned with MRI" (emphasis supplied). This is entirely unsupported and in fact contradicted by the evidence, as this is a company that *Escape chose* to retain to prepare monthly statements due under the Distribution Agreement – statements that Escape accepted and amounts which Escape paid to EMI for months.

contract by Escape. It has provided such a basis, consistent with the suggestion of this Court. Rather, this is a case in which Escape has attempted to frustrate EMI's ability to recover the damages reasonably attributable to Escape's admitted breach of contract by its own admitted failing to timely render Sales Reports. *See* Stipulation Regarding Second Claim in Plaintiff's Complaint ¶ 2 ("Escape also did not provide 'Sales Reports' to EMI pursuant to the Distribution Agreement for [the period December 1, 2011 through March 22, 2012]."). This is precisely the type of situation contemplated by New York courts. "'[I]n computing damages for breach of contract, mathematical certainty is rarely attained or even expected.'" *See Payphones*, 2007 Bankr. LEXIS 1677, at *53 (quoting *Aqua Dredge, Inc. v. Stony Point Marina & Yacht Club, Inc.*, 183 A.D.2d 1055, 583 N.Y.S.2d 648, 650 (3d Dep't 1992)). It is Escape's own doing that an exact dollar amount will be difficult to attain in any scenario and Escape should not "escape" (or further delay) an award of damages attributable to Escape's own stipulated breach of contract.

Should EMI be forced to retain a third party to calculate its damages, under the terms of the Distribution Agreement it will ultimately be Escape's responsibility to pay such costs, and, in such a scenario, Escape should be required to pay those costs up front. *See* Distribution Agreement at Exhibit 2 ¶ 2(d) (providing where Escape has failed to pay any amounts due under the Distribution Agreement, Escape will pay EMI attorneys' fees and costs incurred in a civil action premised on such failure to pay) (a copy of the Distribution Agreement is attached to EMI's October 18, 2013 Letter at Exhibit B). EMI respectfully submits that it should not be forced to incur the significant time and expense in pursuing such undertaking, when a ready, accessible, verifiable alternative analysis is at hand. *See Merlite Indus., Inc. v. Valassis Inserts, Inc.*, 12 F.3d 373, 376 (2d Cir. 1993) ("In support of its claim for lost profits, Merlite, an established business, offered statistical evidence of its past performance in a remarkably similar . . . program. Its proof was of the type held to be sufficient by the New York Court of Appeals . . . ") (citations omitted).

The Court's inquiry is to "make a *reasonable estimate* of damages." *Lexington Products*, 677 F.2d at 253 (emphasis added) (citation omitted). EMI has provided Your Honor with such a reasonable estimate through the proffered past Sales Report analysis, which is, after all, based on Escape's own documents. While EMI as the injured party need only prove its damages "with reasonable certainty," Escape as "the wrongdoer must shoulder the burden of the uncertainty regarding the amount of damages." *Payphones, Inc.*, 2007 Bankr. LEXIS 1677, at *53 (citation omitted), particularly where its own actions caused such uncertainty to exist.

Escape's attempt to evade yet another contractual obligation – the reimbursement of attorneys' fees incurred as a result of its breach – is, unfortunately, par for the course. (Escape concedes that the Distribution Agreement provides for the recovery of attorneys' fees incurred by EMI in connection with this action; *see* Distribution Agreement at Exhibit 2 ¶ 2(d)). There is nothing in the Stipulation that even remotely could be construed as a waiver (let alone a knowing and intentional waiver) of EMI's right to receive contractually-mandated attorneys' fees. Escape's further suggestion that attorneys' fees are not part of "damages" is pure sophistry. The New York Court of Appeals has long recognized "[i]t is not uncommon… for parties to a contract to include a promise by one party to hold the other harmless for a particular loss or damage and **counsel fees are**

**PRYOR CASHMAN LLP**

Hon. Sarah Netburn
November 1, 2013
Page 4

**but another form of damage** which may be indemnified this way." *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (N.Y. 1989) (emphasis added) (citing collected authorities).

      EMI presented a well-reasoned, evidentiary and legally-supported basis for calculating the amount due and owing for Escape's admitted breach of contract. EMI also presented a calculation of interest, with which Escape takes no issue. EMI did so pursuant to the Court's October 4th Order. Escape's response is non-substantive, precisely because it is baseless. In the alternative universe it occupies, Escape labels EMI's approach as "wasteful of judicial resources." To be clear, that has been and remains the intentional consequence of Escape's unstinting approach of fostering as much delay and expense in this case as possible.

      It is respectfully submitted that this Court award EMI's contract damages in its Second Claim for Breach of the Distribution Agreement in the amount of $1,085,818.58, plus attorneys' fees.

      In the alternative, in the event that this Court is not inclined to decide EMI's application on this methodology, then EMI requests an Order requiring Escape to pay, up front, for all third party fees required to prepare the missing monthly Sales Reports as required under the Distribution Agreement.

      We thank the Court for its attention to this matter. We are available at the Court's convenience should Your Honor wish to discuss this matter further.

                                                                    Respectfully,

                                                                   Ilene S. Farkas

cc:      Counsel for Escape (via Email)